## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

_____

| | |
|---|---|
| K.A., a minor, by and through her next friend and guardian, Lisa Adams, ) ) ) ) | |
| T.S., a minor, by and through her friend and guardian, Gigi Smith, ) ) ) | |
| B.S., a minor, by and through his next friend and guardian, Figen Guillot, ) ) ) | |
| S.M., ) ) | CLASS ACTION |
| A.W., a minor, by and through her next friend and guardian, Rhonda Norris, ) ) ) | CIVIL ACTION NO. _____ |
| ) D.J., a minor, by and through his next friend and guardian, Lucetta Jordan, ) ) ) | JURY TRIAL REQUESTED |
| K.P., ) ) ) | **COMPLAINT** |
| L.H., a minor, by and through her next friend and guardian, Joey Haire, ) ) ) | |
| J.E., a minor, by and through his next friend and guardian, Joelandon Dixon, ) ) ) | |
| on behalf of themselves and a class of similarly situated persons, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) ) | |
| JEFF HOBBY, Sheriff of Worth County, Georgia, in his individual capacity, ) ) ) ) | |

|                                                                                      |     |
| ------------------------------------------------------------------------------------ | --- |
|                                                                                      | )   |
| JOHN BRANNEN, Deputy,                                                                 | )   |
| Worth County Sheriff's Office,                                                       | )   |
| in his individual capacity,                                                          | )   |
|                                                                                      | )   |
| RAY GREENE, Deputy,                                                                   | )   |
| Worth County Sheriff's Office,                                                       | )   |
| in his individual capacity,                                                          | )   |
|                                                                                      | )   |
| TYLER TURNER, Deputy,                                                                 | )   |
| Worth County Sheriff's Office,                                                       | )   |
| in his individual capacity,                                                          | )   |
|                                                                                      | )   |
| BRANDI WHIDDON, Deputy,                                                               | )   |
| Worth County Sheriff's Office,                                                       | )   |
| in her individual capacity,                                                          | )   |
|                                                                                      | )   |
| JOHN or JANE DOES 1-25, Deputies,                                                    | )   |
| Worth County Sheriff's Office,                                                       | )   |
| in their individual capacities,                                                      | )   |
|                                                                                      | )   |
| Defendants.                                                                          | )   |
| _____                                                     | )   |

## **COMPLAINT**

Plaintiffs K.A., T.S., B.S., A.W., D.J., L.H., and J.E., by and through their next friends and guardians, and S.M. and K.P. (collectively, "Plaintiffs"), on behalf of themselves and the class alleged herein, state as follows for their complaint:

## **I. PRELIMINARY STATEMENT**

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 arising from a mass search of around 900 students at Worth County High School at the direction of Worth County Sheriff Jeff Hobby.

2.     Plaintiffs bring this action to redress violations of the Fourth and Fourteenth Amendments to the United States Constitution and similar provisions of the Georgia Constitution.

3.     Plaintiffs, the putative class representatives, are nine Worth County High School students who, like hundreds of their peers, were subjected to unlawful and intrusive searches of their persons by employees of the Worth County Sheriff's Office acting at the direction of Sheriff Hobby.

4.     Defendants' mass search of all or nearly all Worth County High School students took place on Friday, April 14, 2017.  On that date, Sheriff Hobby and his deputies placed the high school on "lockdown" for four hours.  About 40 uniformed officers from five law enforcement agencies arrived on school grounds. Educational programs were interrupted, students were directed to remain in specified areas without any explanation as to what was happening, and students' cell phones were seized.

5.     Starting at about 8:00 a.m. on April 14, Defendants, under the direct orders and supervision of Sheriff Hobby, and assisted by officers from other agencies,[1] conducted a drug sweep, indiscriminately searching all or nearly all

---

[1] Officers from the Crisp, Dooly, and Turner County sheriff's offices and the Forsyth Police Department responded to Sheriff Hobby's request for assistance that day, but are not named as defendants.  Upon information and belief, none of the officers from these other agencies participated in searches of students' bodies.

students' persons and clothes, and using police dogs to search their bags,

classrooms, lockers, and cars.

6.      The Sheriff's mass search included a hands-on, body search of every

or nearly every student in attendance at school that day, including students with

disabilities.

7.      Defendants' searches of students were intrusive, performed in an

aggressive manner, and done in full view of other students.  For example:

a)      Deputies ordered students to stand facing the wall with their hands
and legs spread wide apart;

b)      Deputies touched and manipulated students' breasts and genitals;

c)      Deputies inserted fingers inside girls' bras, and pulled up girls' bras,
touching and partially exposing their bare breasts;

d)      Deputies touched girls' underwear by placing hands inside the
waistbands of their pants or reaching up their dresses;

e)      Deputies touched girls' vaginal areas through their underwear;

f)      Deputies cupped or groped boys' genitals and touched their buttocks
through their pants.

8.      Defendants had no warrant or other authority to perform a mass

search on hundreds of public school children.

9.     The purported justification for the mass search was to discover drugs. To that end, Sheriff Hobby had a list of thirteen students on a "target list" that he suspected of possessing drugs.  The "target list" included only *three* students who were in school on April 14.  Defendants had no basis for suspecting any other student of involvement in unlawful activity.

10.     No illegal controlled substances or drug paraphernalia were discovered during the mass search.

11.     Defendants had no right to touch, pat-down, or manipulate the body parts of Plaintiffs or other students.  Defendants had no right to search Plaintiffs' clothes and undergarments.  Defendants' unlawful conduct injured Plaintiffs by causing them fear, embarrassment, stress, and humiliation.

12.     Plaintiffs seek damages and declaratory relief for members of a class of all students seized and searched by Worth County Sheriff's Office employees at Worth County High School on April 14, 2017, other than those identified on the Sheriff's target list.

## II.  JURISDICTION AND VENUE

13.     Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises

under the laws and Constitution of the United States, and pursuant to 28 U.S.C.

§ 1343, as it seeks to redress civil rights violations.

14.     Plaintiffs also bring state-law claims arising out of the same events

and occurrences, and the Court may exercise supplemental jurisdiction over these

claims pursuant to 28 U.S.C. § 1367.  Declaratory relief is available pursuant to 28

U.S.C. § 2201.

15.     Venue is proper pursuant to 28 U.S.C. § 1391, because at least one

Defendant resides in this district and all Defendants reside in this state, and

because a substantial part of the events giving rise to the claims set forth in this

complaint occurred within this district and this division.

### III.  PARTIES

#### A.  Plaintiffs

16.     Plaintiffs are citizens of the United States and, at all times relevant to

this complaint, were residents of Georgia.

#### <u>K.A.</u>

17.     Plaintiff K.A. is a 16-year-old student who was enrolled in the 10th

grade at Worth County High School during the 2016-2017 school year.  She brings

suit through her mother and next friend, Lisa Adams.  Defendant Whiddon seized

K.A. and performed a search of K.A.'s person, as further described herein.

Whiddon performed this search even though Defendants had no individualized suspicion or any reason to believe that K.A. had engaged in any unlawful activity.

**T.S.**

18.     Plaintiff T.S. is a 16-year-old student who was enrolled in the 10th grade at Worth County High School during the 2016-2017 school year.  She brings suit through her mother and next friend, Gigi Smith.  Defendant Jane Doe 1 seized T.S. and performed a search of T.S.'s person, as further described herein.  Jane Doe 1 performed this search even though Defendants had no individualized suspicion or any reason to believe that T.S. had engaged in any unlawful activity.

**B.S.**

19.     Plaintiff B.S. is a 15-year-old student who was enrolled in the 9th grade at Worth County High School during the 2016-2017 school year.  He brings suit through his mother and next friend, Figen Guillot.  Defendant Brannen seized B.S. and performed a search of B.S.'s person, as further described herein.  Brannen performed this search even though Defendants had no individualized suspicion or any reason to believe that B.S. had engaged in any unlawful activity.

**S.M.**

20.     Plaintiff S.M. is an 18-year-old who was enrolled in the 12th grade at Worth County High School during the 2016-2017 school year.[2]  Defendant Whiddon seized S.M. and performed a search of S.M.'s person, as further described herein.  Whiddon performed this search even though Defendants had no individualized suspicion or any reason to believe that S.M. had engaged in any unlawful activity.

**A.W.**

21.     Plaintiff A.W. is a 15-year-old student who was enrolled in the 9th grade at Worth County High School during the 2016-2017 school year.  She brings suit through her mother and next friend, Rhonda Norris.  Defendant Whiddon seized A.W. and performed a search of A.W.'s person, as further described herein.  Whiddon performed this search even though Defendants had no individualized suspicion or any reason to believe that A.W. had engaged in any unlawful activity.

---

[2] S.M. will seek a protective order requiring the litigants to refer to her by her initials in public filings.  Fed. R. Civ. P. 5.2(e).  S.M. has good cause to seek a protective order because: (1) S.M. was a student at the time of the incident described herein; (2) this lawsuit involves sensitive allegations that a law enforcement officer touched private parts of S.M.'s body; and (3) the named plaintiffs who are minors are identified by their initials.  *See id.*

**D.J.**

22.    Plaintiff D.J. is a 16-year-old student who was enrolled in the 10th grade at Worth County High School during the 2016-2017 school year.  He brings suit through his mother and next friend, Lucetta Jordan.  Defendant Greene seized D.J. and performed a search of D.J.'s person, as further described herein.  Greene performed this search even though Defendants had no individualized suspicion or any reason to believe that D.J. had engaged in any unlawful activity.

**K.P.**

23.    Plaintiff K.P. is an 18-year-old who was enrolled in the 12th grade at Worth County High School during the 2016-2017 school year.[3]  Defendant Whiddon seized K.P. and performed a search of K.P.'s person, as further described herein.  Whiddon performed this search even though Defendants had no individualized suspicion or any reason to believe that K.P. had engaged in any unlawful activity.

---

[3] K.P. will seek a protective order requiring the litigants to refer to her by her initials in public filings.  Fed. R. Civ. P. 5.2(e).  K.P. has good cause to seek a protective order because: (1) K.P. was a student at the time of the incident described herein; (2) this lawsuit involves sensitive allegations that a law enforcement officer touched private parts of K.P.'s body; and (3) the named plaintiffs who are minors are identified by their initials.  *See id.*

**L.H.**

24.     Plaintiff L.H. is a 15-year-old student who was enrolled in the 9th grade at Worth County High School during the 2016-2017 school year.  She brings suit through her father and next friend, Joey Haire.  Defendant Whiddon seized L.H. and performed a search of L.H.'s person, as further described herein.  Whiddon performed this search even though Defendants had no individualized suspicion or any reason to believe that L.H. had engaged in any unlawful activity.

**J.E.**

25.     Plaintiff J.E. is a 16-year-old student who was enrolled in the 10th grade at Worth County High School during the 2016-2017 school year.  He brings suit through his father and next friend, Joelandon Dixon.  Defendant Turner seized J.E. and performed a search of J.E.'s person, as further described herein.  Turner performed this search even though Defendants had no individualized suspicion or any reason to believe that J.E. had engaged in any unlawful activity.

**B.  Defendants**

**Jeff Hobby**

26.     Jeff Hobby is the Sheriff of Worth County, Georgia.  He planned, ordered, orchestrated, executed, and directly supervised the conduct of his deputies in conducting the April 14, 2017, body searches of all or nearly all students at Worth County High School.  Hobby was present at the school during the mass

search, intended for his deputies to conduct the body searches described herein, instructed his deputies to conduct the body searches described herein, and personally observed many of the searches as they were being conducted. As such, there is a direct causal connection between Hobby's actions and the constitutional violations that occurred. Hobby acted under color of law and violated the clearly established constitutional rights of Plaintiffs. Hobby is sued in his individual capacity. He is a resident of Georgia.

**John Brannen**

27.    John Brannen is a deputy employed by the Worth County Sheriff's Office. Brannen personally participated in the physical body searches of male students at Worth County High School on April 14, 2017. Brannen performed unlawful and unreasonably intrusive searches on Plaintiff B.S. and other students. He did so even though Defendants had no probable cause, individualized suspicion, or any reason to believe that named Plaintiffs or any other student not on the target list had engaged in any unlawful activity or possessed any unlawful or prohibited items. He acted under color of law and violated the clearly established constitutional rights of the students he searched. He is sued in his individual capacity. Brannen is a resident of Georgia.

### Ray Greene

28.     Ray Greene is a deputy employed by the Worth County Sheriff's Office.  Greene personally participated in the physical body searches of male students at Worth County High School on April 14, 2017.  Greene performed unlawful and unreasonably intrusive searches on Plaintiff D.J. and others.  He did so even though Defendants had no probable cause, individualized suspicion, or any reason to believe that named Plaintiffs or any other student not on the target list had engaged in any unlawful activity or possessed any unlawful or prohibited items.  He acted under color of law and violated the clearly established constitutional rights of the students he searched.  He is sued in his individual capacity.  Greene is a resident of Georgia.

### Tyler Turner

29.     Tyler Turner is a deputy employed by the Worth County Sheriff's Office.  Turner personally participated in the physical body searches of male students at Worth County High School on April 14, 2017.  Turner performed unlawful and unreasonably intrusive searches on Plaintiff J.E. and others.  He did so even though Defendants had no probable cause, individualized suspicion, or any reason to believe that named Plaintiffs or any other student not on the target list had engaged in any unlawful activity or possessed any unlawful or prohibited items.  He acted under color of law and violated the clearly established

12

constitutional rights of the students he searched.  He is sued in his individual capacity.  Turner is a resident of Georgia.

**Brandi Whiddon**

30.     Brandi Whiddon is a deputy employed by the Worth County Sheriff's Office.  Whiddon personally participated in the physical body searches of female students at Worth County High School on April 14, 2017.  Whiddon performed unlawful and unreasonably intrusive searches on Plaintiffs K.A., S.M., A.W., and others.  She did so even though Defendants had no probable cause, individualized suspicion, or any reason to believe that named Plaintiffs or any other student not on the target list had engaged in any unlawful activity or possessed any unlawful or prohibited items.  She acted under color of law and violated the clearly established constitutional rights of the students she searched.  Whiddon is sued in her individual capacity.  She is a resident of Georgia.

**John or Jane Does 1-25**

31.     John or Jane Does 1-25 are employees of the Worth County Sheriff's Office who physically searched the bodies of students at Worth County High School on April 14, 2017.  They did so even though they had no probable cause, individualized suspicion, or any reason to believe that Plaintiffs or any other student not on the target list had engaged in any unlawful activity or possessed any unlawful or prohibited items. They acted under color of law and violated the

clearly established constitutional rights of Plaintiffs.  They are sued in their individual capacities.  Plaintiffs do not know the identities of these employees, but will amend this complaint to include their true names as soon as possible.[4]  Upon information and belief, John or Jane Does 1-25 are residents of Georgia.

## IV.  CLASS ALLEGATIONS

32.    Plaintiffs bring this action individually and, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class of similarly situated persons.  Plaintiffs seek to certify a class defined as all students seized and searched by Worth County Sheriff's Office employees at Worth County High School on April 14, 2017, other than those identified on the Sheriff's target list.[5]

---

[4] Documentation relating to the mass search suggests that all deputies employed by the Worth County Sheriff's Office were involved in the search.  Sheriff Hobby issued a memorandum on April 4, 2017, instructing all deputies to report to work at 7:45 a.m. on the morning of the search for briefing.  Although Plaintiffs do not presently know the names of these deputies, they are identified with 29 numbers in Hobby's memorandum.  These numbers are: W2, W10, W14, W15, W16, W17, W18, W19, W20, W21, W22, W23, W24, W25, W26, W27, W28, W29, W30, W31, W32, W33, W34, W35, W36, W37, W38, W39, and W41.  Plaintiffs will request that the Court permit early discovery, pursuant to Federal Rule of Civil Procedure 26(d)(1), limited to that necessary to learn the identities of the other deputies who conducted body searches of students.  Video recordings in the custody of administrators of Worth County High School will likely reveal the identities of the deputies who conducted the body searches.

[5] As further alleged herein, the three students on the Sheriff's target list in attendance that day were detained and searched in administrative offices at the school, rather than in the hallways or gym with the rest of their classmates.

33.    Plaintiffs meet the requirements of Rule 23(a) in that:

a)    The class is so numerous that joinder of all members is
      impracticable.  The class consists of nearly all of the students in
      attendance at Worth County High School on April 14, 2017—
      approximately 900 students.

b)    Every class member's claim turns on the following question,
      which is therefore common to the class: whether a law
      enforcement officer may seize and search a student's body and
      personal belongings, for purposes of discovering evidence of
      criminal activity, without any justification or information about
      the student other than that he or she is enrolled at a particular
      school.

c)    The claims of the named Plaintiffs are typical of the claims of
      the class because each member of the class was searched at the
      direction of Sheriff Hobby, by one of his deputies, at Worth
      County High School, on April 14, 2017, for the same purpose,
      and with the same absence of any individualized suspicion.

d)    The named Plaintiffs will fairly and adequately protect the
      interests of the class.  The Plaintiffs possess the requisite
      personal interest in the subject matter of the lawsuit and possess

no interests adverse to other class members.  The Plaintiffs are represented by attorneys at the Southern Center for Human Rights, a nonprofit organization with extensive experience in civil rights class action litigation, and Horsley Begnaud LLC, a law firm with extensive experience in civil rights and personal injury cases.

e)   Plaintiffs meet the requirement of Rule 23(b)(3) because common questions of law and fact predominate over questions affecting individual class members and a class action is superior to any other method of adjudicating this dispute.  In this case, where about 900 students were unlawfully searched by Defendants, a class action will permit common questions of law and fact to be resolved in one proceeding, and will avoid burdening the court with numerous, separate lawsuits that could result in inconsistent judgments.

## V.  STATEMENT OF FACTS

### A.   Defendants Planned a Mass Search of All or Nearly All Students at Worth County High School.

34.     Defendant Hobby maintains a "target list" of people he intends to investigate because he suspects they have committed crimes.  In early 2017, Hobby placed thirteen Worth County High School students on the "target list" because he believed they might have brought drugs to the school.

35.     In late March 2017, Hobby informed Harley Calhoun, the principal of Worth County High School, that he planned to conduct a search at the school.

36.     Hobby did not inform Calhoun that Hobby intended for his deputies to conduct body searches of all or nearly all students in the school.

37.     At no time did Calhoun, or any other school administrator, agree to permit Defendants to conduct body searches of each student in the school.

38.     The School Resource Officer—a Sylvester Police Department officer assigned to Worth County High School—was attending a training on April 14, 2017, and was unaware of Defendants' plan to conduct a mass search on that date.

39.     Although Hobby did not share with school administrators that he intended for his deputies to conduct a hands-on, body search of all students, that was his plan.

40.     Hobby knew that his deputies would search the bodies of every or nearly every student at Worth County High School, even though Defendants did

not have individualized suspicion that any particular student, except possibly the three students on the target list, was involved in any wrongdoing.

41.     To ensure a sufficient number of officers to search the school's approximately 900 students, Hobby ordered all of his deputies to report for work on the morning of the search.

42.     Hobby personally ordered Defendants Brannen, Greene, Turner, Whiddon, and the John and Jane Doe Defendants to search every or nearly every student at the school and personally instructed classrooms full of students to line up in hallways and in the gym to be searched.  Hobby knew that the searches were being performed with the level of intrusiveness described in this complaint and personally observed many of them.

## B.     Defendants Lacked Justification for the Body Searches of 900 Students.

43.     Upon arriving at Worth County High School on April 14, 2017, Hobby gave Principal Calhoun a written list of the names of thirteen students on his "target list."  Hobby ordered that the students on the target list be brought to administrative offices and isolated there for the duration of his search.

44.     Per Hobby's order, the three students in attendance that day whose names appeared on the target list were brought to school administrative offices where they were held until the search concluded.

45.     Defendants had no reason to believe that any student in school that day (with the possible exception of the three students on the target list) had any illegal substance or engaged in any unlawful activity.

46.     Neither Calhoun nor any other school administrator had individualized suspicion or any reason to believe that any student in school that day (with the possible exception of the three students on the target list) had any illegal substance or engaged in any unlawful activity.

47.     With respect to Plaintiffs who were subject to searches of their bras or underwear, Defendants had no reasonable suspicion of danger and no reason to believe that any student was hiding any controlled substance or other prohibited item in his or her undergarments.

48.     At the request of Hobby, a school official made an announcement over the intercom shortly after school began on the morning of April 14, 2017, indicating that the school was being placed on lockdown.  This was the first time that teachers learned that law enforcement activity of any kind would be occurring at the school that day.

49.     Following the announcement regarding the lockdown, Plaintiffs were confined either to their first-period classrooms, to the hallways immediately outside their classrooms, or to the gym.  Plaintiffs' cell phones were seized so that they could not reach their parents.  Plaintiffs were prevented from contacting their

parents during the entire duration of the search—from approximately 8:00 a.m. until approximately 12:00 p.m.

50.    During the lockdown and mass search, Defendants restricted students' access to restrooms.  Some students were not permitted to go to the restroom for the entire four-hour lockdown period.

51.    The deputies conducting the searches—including searches that involved the touching of or reaching inside Plaintiffs' undergarments—sometimes did not wear gloves or did not change their gloves between searches.

52.    Despite searching approximately 900 students, Defendants did not discover any illegal drugs or drug paraphernalia.

**C.    Defendants' Body Searches of Plaintiffs Were Unreasonable, Aggressive, and Invasive.**

**<u>K.A.</u>**

53.    K.A., age 16, was in her first period literature class when Defendants began their mass search.  Sheriff Hobby entered K.A.'s classroom and ordered the students to line up in the hallway with their hands on the wall.  Deputy Whiddon took one of K.A.'s arms, placed it higher up on the wall, and kicked her legs to open them wider.  Whiddon pulled the front of K.A.'s bra away from her body by the underwire and flipped it up.  Whiddon also looked down the back and front of K.A.'s dress.  Whiddon slid her hands from one of K.A.'s ankles up to her pelvic area.  Whiddon's hands went underneath K.A.'s dress as Whiddon felt up K.A.'s

20

leg.  Whiddon's hands stopped on and cupped K.A.'s vaginal area and buttocks.
Whiddon then slid her hands down to the other ankle.  Whiddon was wearing
gloves, but did not change them before or after her search of K.A.

**T.S.**

54.     T.S., age 16, was in her first period art class when Defendants began
their mass search.  When her class was called into the hallway, Worth County law
enforcement officials told T.S. and the other students in her class to place their
hands on the wall and spread their legs apart.  Jane Doe 1 nudged T.S.'s legs
further apart, and began patting T.S.'s thighs.  Jane Doe 1 asked if T.S. had any
pockets; T.S. said no.  Jane Doe 1 then slid her hands down T.S.'s legs, over her
skirt.  Jane Doe 1 then squeezed T.S.'s breasts through her shirt, and patted the
pockets of T.S.'s jean jacket.  Jane Doe 1 asked T.S. to lift the front of her shirt,
and T.S. complied, lifting her shirt high enough to expose her stomach and navel.
Jane Doe 1 also required T.S. to take off her shoes and lift her feet so that Jane Doe
1 could see their soles.

**B.S.**

55.     B.S., age 15, was in his literature composition class when Defendants
began their mass search.  When B.S.'s class was called into the hallway, B.S. saw
Sheriff Hobby standing amongst his deputies.  Before Defendant Brannen began to
search B.S., he asked whether B.S. had anything that might cut or injure him; B.S.

said no.  Brannen started at B.S.'s torso and worked his way down.  He patted

B.S.'s shoulders and chest and abdomen with his open palms.  Brannen spent three

to five seconds repeatedly grabbing with the tips of his fingers at the front of B.S.'s

pants, moving his fingers back and forth from B.S.'s front pockets to his groin.  He

continued doing so until B.S. informed him that one of his pockets contained a set

of earbuds and that the other one was empty.  During this time, Brannen's

fingertips touched B.S.'s penis and testicles, over clothes, four to five times.  Next,

Brannen pinched B.S.'s buttocks repeatedly through B.S.'s back pockets.  Finally,

Brannen pushed with his fingers on the top of B.S.'s shoes.

### **S.M.**

56.     S.M., age 18, arrived at the high school after Defendants had started

their mass search.  S.M. participates in an early childhood education internship and

had been on an internship assignment with other students at a nearby primary

school.  When S.M. arrived at the high school, she encountered three law

enforcement officers with dogs in the parking lot.  The officers ordered S.M. to

exit the car and leave her possessions inside.  S.M. was directed to the gym, which

was full of other students.  After S.M. waited in the gym for some time, Deputy

Whiddon began to search S.M.  Whiddon instructed S.M. to spread her legs and

place her hands, also spread, on the wall.  Whiddon patted down each of S.M.'s

legs, and rubbed her hand up the inside of each leg and over her groin.  Whiddon

asked S.M. what she had in her back pockets.  S.M. replied that she had some

dollar bills and chap stick.  Whiddon placed her hands in the back pockets of

S.M.'s jeans.  Whiddon then inserted the fingers on both of her hands four inches

down into the waistband of S.M.'s pants and moved them around from front to

back.  Next, Whiddon rubbed her hands over S.M.'s bare stomach.  Whiddon

inserted her fingertips under the band of S.M.'s bra in her armpits and shook S.M.

forcefully for three to five seconds.  Finally, Whiddon ran her hands down S.M.'s

bare arms, and directed S.M. to remove her sandals.  Whiddon was not wearing

gloves during her search of S.M.  Sheriff Hobby was present at the time Whiddon

searched S.M.

**A.W.**

57.    A.W., age 15, was in her world history class when Defendants started

their mass search.  When her class was called out into the hallway, A.W. and her

classmates were ordered to line up with their hands against the wall and their legs

spread.  A.W. was wearing a sleeveless dress and cover-up over her arms.  Deputy

Whiddon asked A.W. if she had pockets; although A.W. said no, Whiddon

searched for pockets anyway.  At Whiddon's direction, A.W. turned to face

Whiddon, and Whiddon reached her hands around A.W.'s midsection, between her

cover-up and her dress, around to her back.  A.W. then turned back to the wall, and

Whiddon touched her knees to spread them further apart.  On one leg and then the

other, Whiddon moved both her hands from A.W.'s knees up to her thighs, within one inch of her vaginal area.  Whiddon then reached her hand over A.W.'s shoulder and into the front of A.W.'s dress, and moved her hand left and right between her breasts.  Whiddon placed her fingertips under the underwire of A.W.'s bra and touched her breasts.

**D.J.**

58.     D.J., age 16, was in his social studies class when Defendants started their mass search.  When his class was called out into the hallway, D.J. and his classmates were lined up against the wall, and told to "stay still" and "face forward," with their hands on the wall and their legs spread.  At some point, a deputy asked D.J. whether he had already been searched; D.J. answered in the negative.  Deputy Greene then conducted a search of D.J.'s body.  Greene rubbed the palms of his hands over D.J.'s lower and upper arms, shoulders, chest, back, and abdomen.  Next, he placed a hand inside one of the front pockets of D.J.'s pants, which contained pencils.  Greene then spent over ten seconds using his fingers to cup and grope D.J.'s penis and testicles through his pants.  After D.J. reacted by shifting his position, Greene sped up the remainder of the search, rubbing the palms of his hands down the insides and outsides of both of D.J.'s legs. Finally, Greene removed D.J.'s shoes and checked inside them, and ran his hands across the bottoms of D.J.'s socks.

**K.P.**

59.     K.P., age 18, was in her economics class when Defendants started their mass search.  When her class was called out into the hallway, K.P. was told to stand with her hands on the wall and her legs spread.  She was standing with her legs about shoulder-width apart, but Deputy Whiddon kicked them further apart. Whiddon told K.P. not to look back at her.  Whiddon unzipped K.P.'s jacket and asked K.P. whether it had pockets.  Despite K.P.'s statement that it did not have pockets, Whiddon reached inside to feel for pockets.  K.P. took the jacket off. Then, Whiddon rubbed her hands from K.P.'s waist up to her breasts and squeezed her breasts five times through her shirt.  Whiddon moved the front center of K.P.'s bra left and right, and then lifted the underwire of her bra so that it was sitting above her bare breasts.  Whiddon then groped her breasts twice through her shirt. Next, Whiddon put her hands into K.P.'s jeans pockets, at an angle towards her groin area.  Through the pockets, Whiddon's fingertips went under K.P.'s underwear and touched her vaginal area.  Whiddon also patted down K.P.'s legs, from high on her thighs down to her ankles.  Finally, Whiddon told K.P. to take off her shoes; she looked inside them and then threw them back at K.P.   K.P. had to pull her bra down herself at the end of the search.

**L.H.**

60.     L.H., age 15, was in her algebra class when Defendants started their mass search.  When her class was called out into the hallway, L.H. and her classmates were ordered to put their hands on the wall, spread their legs apart, and remain quiet.  At the time Deputy Whiddon searched L.H., L.H. was standing next to a male classmate.  Whiddon first patted L.H.'s chest.  Then, she moved to L.H.'s legs, and patted down both of them simultaneously, with one hand on each, from the tops of her thighs to her ankles.  Whiddon took L.H.'s shoes off and banged them together, and patted L.H.'s feet.  Then, Whiddon returned to L.H.'s upper body.  She reached up under L.H.'s shirt, lifted her bra, and touched her bare breasts, including her nipples.  Whiddon also shook L.H.'s bra.  Next, Whiddon inserted her fingers about two inches into the waistband of L.H.'s jeans, between her jeans and her underwear, and moved her fingers across the front of her abdomen.  Finally, Whiddon told L.H. that she could put her shoes on and turn around.  Whiddon was wearing gloves, but did not change them before or after her search of L.H.

**J.E.**

61.     J.E., age 16, was in his agriculture class when Defendants started their mass search.  When his class was called into the hallway, J.E. and his classmates were told to take off their shoes and stand with their hands on the wall.  Deputy

Turner asked J.E. if he had anything in his pockets that could poke him; J.E.
replied that he had headphones, bubble gum, and a tube of chap stick.  Turner took
the chap stick, applied some to his glove, and smelled the substance.  Turner then
put his hands in J.E.'s back pockets.  Next, Turner twice rubbed his hands up and
down J.E.'s chest, and inserted his hands between the buttons on his collared shirt,
but over his undershirt, to rub J.E.'s underarms.  Turning to J.E.'s lower body,
Turner used both hands to rub down each of J.E.'s legs, starting at his thighs and
ending at his ankles.  Then, Turner reached between J.E.'s legs, cupped his
testicles, and squeezed them twice; he also touched J.E.'s penis through his pants.
Turner next touched J.E.'s buttocks though his pants, and squeezed them twice.

### D. Defendants' Unlawful Mass Search Injured Plaintiffs.

62.    Defendants' actions harmed the Plaintiffs by causing them injury
including anxiety, embarrassment, and humiliation.

63.    Defendants' actions caused Plaintiffs to experience fear, shame, and
emotional distress.

64.    Defendants' actions harmed the Plaintiffs by damaging their ability to
trust law enforcement officers and persons in positions of authority in general.

### E. Defendants Violated Clearly Established Law.

65.    It is clearly established that law enforcement officers violate the
Constitution when, at their own instigation, in an effort to obtain evidence of

27

illegal drug possession, they seize and search the body of any person (including a student) without probable cause.[6]

66.    It is clearly established that probable cause requires individualized suspicion, and that mere attendance at a large school at which a few students are suspected of possessing drugs is not sufficient to establish probable cause or otherwise render reasonable the seizure and search of the body of a student, by and at the instigation of law enforcement officers, for the purpose of obtaining evidence of illegal drug possession.[7]

---

[6] *See State v. Young*, 216 S.E.2d 586, 591-92 (Ga. 1975) (explaining that while attenuated Fourth Amendment protections apply to searches conducted by "public school officials," "entirely without the participation of law enforcement officers," "law enforcement officers, of course, are bound by the full panoply of Fourth Amendment rights" when searching students); *see also State v. K.L.M.*, 628 S.E.2d 651, 652-53 (Ga. App. 2006) (requiring probable cause for the in-school search of a student by a law enforcement officer even though the search was directed by the principal "[b]ecause [the officer] was a law enforcement officer who participated in the search"); *Patman v. State*, 244 S.E.2d 118, 120 (Ga. App. 2000) ("Unlike a school official, a police officer must have probable cause to search a suspect."), *disapproved of on other grounds by State v. Kazmierczak*, 771 S.E.2d 473, 476-77 (Ga. App. 2015). *Cf. Stephens v. DeGiovanni*, 852 F.3d 1298, 1316 n.14 (11th Cir. 2017) (recognizing that "law can be clearly established for qualified immunity purposes" by decisions of "the highest court of the state where the case arose" (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 n.5 (11th Cir. 2002)).

[7] *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.  Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person."  (citation omitted)); *see also Swint v. City of Wadley, Ala.*, 51 F.3d 988, 997 (11th Cir. 1995) ("Probable cause to arrest one suspect, and even probable cause to believe that a number of other or unidentified people had sold

67.    Defendants had not obtained warrants to arrest or to search Plaintiffs.

68.    Plaintiffs did not consent to being seized or searched.

69.    None of the searches, including the searches of Plaintiffs, occurred incident to lawful arrests.

70.    There existed no exigent circumstances to justify the searches of Plaintiffs.

71.    Even if Defendants had seized and searched the bodies of Plaintiffs at the behest of school administrators and for purposes of maintaining an educational environment, they would still have violated Plaintiffs' clearly established constitutional rights by conducting mass, physically intrusive searches without any individualized suspicion.[8]

---

drugs in the establishment in the past, did not give the officers *carte blanche* to seize everyone who happened to be in the Club when the two raids took place.").

[8] *See Safford United Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 374-77 (2009) (establishing that "specific justifications" are required for an intrusive search of a student by school officials—not generalities, but rather reasonable suspicion that the particular drugs the particular student is believed to be carrying pose a danger, or reasonable suspicion that the student is at that time hiding those drugs near her private parts); *see also Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989) (explaining that only in "limited circumstances, where the privacy interests implicated by the search are minimal, and where an important government interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, [may] a search . . . be conducted despite the absence of such suspicion"); *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1169 (11th Cir. 2001) (concluding that an intrusive, mass search of students by school officials violated the Fourth Amendment because the searches were conducted without

72.     Defendants had fair warning that their conduct was unconstitutional because a mass search of nearly 900 public school children by law enforcement officers without any individualized suspicion clearly and obviously violates the Constitution. *Gray ex. Rel. Alexander v. Bostic*, 458 F.3d 1295, 1306-07 (11th Cir. 2006) (discussing "obvious clarity" cases in the school seizure context).

73.     Based on the totality of the circumstances, the seizures and searches of Plaintiffs were plainly unreasonable. The conduct of Defendants lies so "obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was [or should have been] readily apparent . . . ." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997).

## VI.  CLAIMS FOR RELIEF

## <u>COUNT I</u>

## UNCONSTITUTIONAL SEARCH AND SEIZURE

**Violation of the Fourth and Fourteenth Amendments to the
United States Constitution, Brought Under 42 U.S.C. § 1983,
and Violation of Art. 1, Sec. 1, Para. XIII of the Georgia Constitution**

**(by all Plaintiffs against all Defendants)**

74.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint as if fully stated herein.

---

individualized suspicion), *vacated*, 536 U.S. 953 (2002), *reinstated*, 323 F.3d 950 (11th Cir. 2003).

75.    Without probable cause, reasonable suspicion, or legal authority, Defendants detained Plaintiffs and other Worth County High School students; impeded their liberty by requiring them to remain in particular locations in the school for four hours; and subjected Plaintiffs to intrusive, hands-on, physical searches of their bodies.

76.    Defendants' mass search and seizure was not justified at its inception. Defendants subjected Plaintiffs to the searches and seizures described herein even though they had no reason to believe that Plaintiffs had engaged in any unlawful activity.  Defendants had no reasonable grounds for suspecting that the searches of Plaintiffs would turn up evidence that any student not on the target list had violated the law.

77.    Defendants' searches of Plaintiffs were not reasonably related to the circumstances that purportedly justified the searches.  Defendants' searches were unreasonably intrusive.

78.    Defendants had fair warning that their conduct would violate the federal and state constitutions and no reasonable officer could have believed that subjecting Plaintiffs to these searches and seizures was legal in the absence of individualized suspicion or probable cause.

79.    In each and every instance set forth above, Defendants acted intentionally, with malice, and with actual intent to cause injury in the performance

31

of their official functions.  Defendants knew that requiring Plaintiffs to submit to the searches described herein violated Plaintiffs' constitutional rights.

80.   Hobby and other supervisors within the Worth County Sheriff's Office were confronted with and personally witnessed their officers' illegal acts, possessed the power to prevent them, and chose not to act.

81.   Defendants are jointly and severally liable for the violation of Plaintiffs' rights, and the harm Plaintiffs suffered as a result, because each Defendant personally participated in the actions described herein, expressly ordered or directed, or implicitly authorized, approved, or knowingly condoned or failed to remedy the wrongs at issue.

82.   Defendants' above-described actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs' rights and should be punished or deterred by an award of punitive or enhanced damages against Defendants as permitted by law.

## COUNT II

### VIOLATION OF RIGHT TO PRIVACY

**Violation of the Fourteenth Amendment to the United States Constitution,
Brought Under 42 U.S.C. § 1983,
and Violation of Art. I, Sec. I, Para. I of the Georgia Constitution**

**(by all Plaintiffs against all Defendants)**

83.     Plaintiffs re-allege and incorporate by reference the preceding

paragraphs of this complaint as if fully stated herein.

84.     Without probable cause, reasonable suspicion, or legal authority,

Defendants detained Plaintiffs and other Worth County High School students for

several hours and subjected Plaintiffs and other students to intrusive, hands-on,

physical searches of their bodies by law enforcement officers.

85.     Defendants subjected Plaintiffs to the mass searches described herein

even though they had no reason to believe that Plaintiffs had engaged in any

unlawful activity.

86.     Defendants subjected Plaintiffs to the body searches described herein

without the authorization or cooperation of school administrators.

87.     Defendants subjected Plaintiffs to body searches that violated

Plaintiffs' right to privacy under the Fourteenth Amendment to the United States

Constitution and under Ga. Const. art. I, Sec. I, Para. I.

88.     Defendants had fair warning that their conduct would violate the federal and state constitutions and no reasonable officer could have believed that requiring Plaintiffs to submit to these searches was legal.

89.     In each and every instance set forth above, Defendants acted intentionally, with malice, and with actual intent to cause injury in the performance of their official functions.  Defendants knew that subjecting Plaintiffs and other students to the searches described herein violated Plaintiffs' constitutional rights.

90.     Hobby and other supervisors within the Worth County Sheriff's Office were confronted with and personally witnessed their officers' illegal acts, possessed the power to prevent them, and chose not to act.

91.     Defendants are jointly and severally liable for the violation of Plaintiffs' rights, and the harm they suffered as a result, because each Defendant personally participated in the actions described herein, expressly ordered or directed, or implicitly authorized, approved, or knowingly condoned or failed to remedy the wrongs at issue.

92.     Defendants' above-described actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs' rights and should be punished or deterred by an award of punitive or enhanced damages against Defendants as permitted by law.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs accordingly pray for the following relief:

a)      Certification of a class pursuant to Federal Rule of Civil Procedure

23;

b)      Compensatory damages, in an amount to be determined by the jury;

c)      Punitive damages according to federal and state law;

d)      A declaratory judgment stating that a law enforcement officer violates

a student's rights under the United States and Georgia Constitutions

when he conducts a search of the student's body absent voluntary

consent or individualized suspicion that the student has violated the

law;

e)      Reasonable attorneys' fees, expenses, and costs of litigation pursuant

to 42 U.S.C. § 1988 and other applicable laws.

f)      Such further relief as this Court deems just and proper.

DATED: This 1st day of June, 2017.

Respectfully submitted,

/s/ Sarah Geraghty
Sarah Geraghty
Ga. Bar No. 291393
Gerald Weber
Ga. Bar No. 744878
Crystal Redd
Ga. Bar No. 969002
Aaron Littman

Ga. Bar No. 843053
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, NW
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
sgeraghty@schr.org

/s/ Mark Begnaud
Mark Begnaud
Ga. Bar No. 217641
Nathanael Horsley
Ga. Bar No. 367832
HORSLEY BEGNAUD LLC
750 Hammond Drive
Building 12, Suite 300
Atlanta, Georgia 30328
(770) 765-5559
(404) 602-0018 (fax)
mbegnaud@gacivilrights.com

*Counsel for Plaintiffs*