## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| _____  )<br>K.A., a minor, by and through her next  )<br>friend and guardian, Lisa Adams, *et al.*,  )<br>individually and as representatives  )<br>of a proposed class,  )<br>  )<br>    Plaintiffs,  )<br>  )<br>  v.  )<br>  )<br>JEFF HOBBY, Sheriff of Worth  )<br>County, Georgia, in his individual  )<br>capacity, *et al.*,  )<br>  )<br>    Defendants.  )<br>_____  ) | CIVIL ACTION NO.:<br>1:17-cv-00099-LJA |

## <u>SETTLEMENT AGREEMENT</u>

Named Plaintiffs K.A., T.S., B.S., A.W., D.J., L.H., and J.E., by and through their next friends and guardians, and S.M. and K.P. (collectively, "Plaintiffs") and Defendants Jeff Hobby, David Carmichael, Chris Baltenberger, John Brannen, Wesley Chambless, Anthony Cravey, Skyler Duke, Kevin Ford, Lisa House, Paul Klein, Clay Lawson, Truitt Odom, Richard Sanders, Lisa Stocks, John Sumner, Tyler Turner, Brandi Whiddon, and Deidra Tucker Whiddon (collectively, "Defendants"), hereinafter collectively referred to as the "Parties," hereby agree

to settle and resolve all of the issues raised in the complaint filed in the above-styled action, including any claims that were asserted, or could have been asserted, as a result of the searches conducted at the Worth County High School on April 14, 2017 by or at the behest of Defendants, upon the following terms:

1. **Class Certification.** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Parties will ask the Court to certify a class (the "Class") that consists of all students seized and searched by employees of the Worth County Sheriff at Worth County High School on April 14, 2017, other than those identified on Worth County Sheriff Jeff Hobby's "target list". [1] At the same time as they ask the Court to certify the Class, the Parties will also ask the Court for preliminary approval of the terms of this settlement agreement (the "Agreement"). Assuming the Court preliminarily approves the Agreement, the Parties shall proceed in accordance with the following paragraphs.

---

[1] Sheriff Hobby had a list of thirteen students on a "target list" that he suspected of possessing drugs. (Doc. 1 ¶¶ 9, 34.) The target list included only three students who were in school on April 14. (Doc. 1 ¶¶ 9, 43-45.) As alleged in the Complaint (Doc. 1 ¶¶ 9, 43-45), the three students on the Sheriff's target list in attendance that day were detained and searched in administrative offices at the school, rather than in the hallways or gym with the rest of their classmates.

2.    **Notice.**  Following the certification of the Class and preliminary approval of the Agreement, Defendants will attempt to notify the members of the Class of the terms of the Agreement in the following manner:

a.    Defendants will publish the advertisement (the "Advertisement") attached as Exhibit D in the Sylvester Local News once a week for two weeks to begin within 30 days following the certification of the Class and preliminary approval of the Agreement.

b.    Within two weeks of certification of the Class and preliminary approval of the Agreement, Defendants, using Plaintiffs' attorneys' address as the return address, will mail the notices attached as Appendices A and B (the "Notice" or "Notices") by U.S. Mail, First Class to the individuals identified by the Worth County Board of Education as students who were enrolled at Worth County High School on April 14, 2017, with the following understanding:

(1)    In reviewing the attendance records provided by the Worth County School District, attorneys for the Class have made a determination of students presumed to be present and

3

searched on April 14, 2017, and students presumed to be absent and not searched on April 14, 2017. The total list of enrolled students, divided into two categories (Category 1-Presumed Present and Category 2-Presumed Absent), is filed contemporaneously herewith as Exhibit C under seal, along with the school attendance records, filed contemporaneously herewith as Exhibit B under seal.

(2)    Different Notices will be mailed to the students on the Category 1-Presumed Present and Category 2-Presumed Absent lists. The Notices will inform the students whether the school records indicate that the student was present or absent, and allow for the student to correct that understanding if it is incorrect.

(3)    The Notices will be mailed to the most recent address included in the file maintained by Worth County Board of Education, which are shown on the spreadsheet attached as Exhibit C, unless, prior to the date on which the Notices

are mailed, a student has communicated to the attorneys representing the Class that the student has a new address, in which case the Notice will be sent to the new address.

(4)    If the Notice that is originally mailed is returned to the attorneys representing the Class with a forwarding address, the attorneys representing the Class will mail a second Notice to the forwarding address.

(5)    If a Notice is returned as undeliverable, the attorneys for the Class will have an opportunity to identify a current address for each such student. If the attorneys for the Class identify a more current address, they shall mail another Notice to that address within five days of receipt of that address.

3.    **Response.** Each Notice mailed in accordance with paragraph 2, above, will be accompanied by a copy of the response form (the "Response Form") that is attached as Exhibit B. In addition, copies of the Response Form will be available at the Main Office at the Worth County High School.  Furthermore,

the attorneys for the Class and Defendants will deliver a copy of the Response

Form by mail or electronic mail to any individual who requests such.

    a.    The Notices and Response Forms will indicate that the Response

Forms must be returned to the attorneys for the Class within 100 days

of the date the Court grants preliminary approval.  That date will

hereinafter be referred to as the "Response Form Deadline."

    b.    Following the Response Form Deadline, Attorneys for Defendants will

provide all received Response Forms to attorneys for the Class.

4.    **Categorization of Class Members.**  The Response forms have a series of

questions designed to determine whether the student's search was "Highly

Invasive" or "Minimally Invasive."  The Parties are also filing under seal

contemporaneously herewith the methodology used to categorize a response

as either Highly Invasive or Minimally Invasive as Exhibit F.  After the

Response Form Deadline, attorneys for the Class will classify the students in

accordance with the following procedures:

    a.    The student is on the Category 1-Presumed Present list, the student

returns a Response Form before the Response Form Deadline, and the

student's answers to the questions on the Response Form indicate that the student's search was Highly Invasive ("Highly Invasive").

b.    The student is on the Category 1-Presumed Present list, the student returns a Response Form before the Response Form Deadline, and the student's answers to the questions on the Response Form indicate that the student's search was Minimally Invasive ("Minimally Invasive").

c.    The student is on the Category 1-Presumed Present list and the student does not return a Response Form before the Response Form Deadline ("Presumed Present/No Response").

d.    The student (i) is on the Category 2-Presumed Absent list and does not return a Response Form before the Response Form Deadline, (ii) the student is on the Category 2-Presumed Absent list and returns a Response Form confirming that the student was absent and/or not searched, or (iii) the student is on the Category 1-Presumed Present list and returns a form indicating that the student was absent, or was present but was not searched ("Absent/Not Searched").  Any student in this category does not qualify as a member of the Class.

e.    The student is on the Category 2-Presumed Absent list and returns a Response Form before the Response Form Deadline indicating that the student was present and searched ("Presumed Absent/Claimed Search").

f.    The student indicates his or her intention to opt out of the Class ("Opt-Out").

5.    **Magistrate Determination.**    Each student categorized as Presumed Absent/Claimed Search will be referred to a United States Magistrate Judge for the Middle District of Georgia or, if the Magistrate Judge is not available to perform that function, some other person who may be agreed to by the parties, or in the manner directed by the Court.  That Magistrate Judge or arbiter will determine the categorization of the student.  Any party that deems it necessary shall have the opportunity to conduct discovery with regard to whether a person is a member of the Class.

6.    **Opt-Out Effect.**  The individuals who opt out of the Class will not be precluded from asserting any claim or lawsuit against Defendants. However, the individuals who opt out of the Class will not be entitled to any of the compensation due to members of the Class pursuant to paragraph 8 below.

7.    **Compensation for Class and Preclusion of Claims.**  Each individual who satisfies the criteria for Class membership, and who does not opt out of the Class, will be entitled to the compensation described in paragraph 8 below. Each member of the Class will be precluded from asserting any further claim or lawsuit against Defendants and their respective agents, officers, deputies, employees, officials, personal representatives and successors.

8.    **Class Member Distribution Schedule.**  Assuming final approval, payments to the Class Members will proceed as follows:

a.    The average per-Class-Member payment will be $2,655.00, with a minimum per-student distribution of $1,000 and a maximum per-student distribution of $6,000.  The total amount under this subsection (i.e. $2,655.00 x the total number of Class Members) will be referred to as the "Total Class Distribution."

b.    The students categorized as Presumed Present/No Response will receive $1,000.

c.    The students categorized as Highly Invasive will receive three times the amount received by the students categorized as Minimally

9

Invasive.[2]  If, however, this formula results in a distribution to the students in the Highly Invasive category over $6,000 per student, then each student in the Highly Invasive category will receive $6,000 and the remaining funds will be distributed pro rata to the students categorized as Minimally Invasive.[3]

9.    **Preliminary Approval.**  At the same time the Parties ask the Court to certify the Class, as contemplated by paragraph 1 above, the Parties will ask the Court to: (a) give preliminary approval to the Agreement; (b) direct that the Class members be notified in accordance with the terms of the

---

[2] By way of example, if there are 846 enrolled students (which is believed to be the enrollment figure), 810 students were present and searched (which is believed to be the present presumptive figure), no students opt out, making the class 810 members, then Defendants will make a total payment of $2,150,550 (810 x $2,655).  Assuming further that 150 students fall in the Highly Invasive category, 600 students fall in the Minimally Invasive category, and 60 students fall into the Presumed Present/No Response category, then the distributions will be as follows: Highly Invasive $5,973.00 each: Minimally Invasive $1,991.00 each; Presumed Present/No Response $1,000.00 each.

[3] If, for example, there are 810 students in the class and 150 in the Highly Invasive category, then the total payout will be $2,150,550 (810 x $2,655).  Assuming further that 150 are Highly Invasive, 400 are Minimally Invasive, and 260 fall into the Presumed Present/No Response category, then the distributions will be as follows: Highly Invasive $6,000.00 each: Minimally Invasive $2,476 each; Presumed Present/No Response $1,000.00 each.

Agreement; and (c) schedule a fairness hearing in accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure.

10. **Attorneys' Fees.** Defendants will pay attorneys' fees in the amount of $450,000. However, should more than 140 students opt out of the class, the attorneys' fee amount will be reduced by $600 for each student who opts out of the Class after the first 140 opt-outs.[4]

11.     **Payment by Defendants.** Worth County entered into a coverage agreement (the "Coverage Agreement") with the Association County Commissioners of Georgia – Interlocal Risk Management Agency ("ACCG-IRMA") and the Coverage Agreement provides coverage to Defendants that is akin to insurance. Assuming the Court grants the motion contemplated in the preceding paragraph, and the Court conducts a fairness hearing and, thereafter, approves the Agreement, ACCG-IRMA will deliver payment as follows:

---

[4] Thus, by way of example, if 125 students opt out of the class, the attorneys' fees would not be reduced. However, if 145 students opt out of the class, the attorneys' fees would be reduced by $3,000.00 (5 students x $600.00 = $3,000.00) (the attorneys' fee amount is hereinafter the "Attorneys' Fee").

    a.    ACCG-IRMA will deliver to attorneys for the Class a check for the Total Class Distribution. That check will be made payable to the attorneys for the Class and shall be deposited in their trust account.

    b.    ACCG-IRMA will deliver to attorneys for the Class a separate check for Attorneys' Fee, which amount attorneys for the Class will be authorized to collect immediately.

12.    **Distribution of Individual Payments to Class Members.** Within 45 days of their receipt of the check for the Total Class Distribution, attorneys for the Class will mail a check for the individual payment amount per paragraph 8 above (the "Individual Payment") to each Class Member who is entitled to payment. The Individual Payments will be redeemable for 365 days and an accompanying letter will inform the Class member that if the check is not redeemed within 365 days, the Class member will forfeit his or her right to collect payment. The Individual Payments will be distributed as follows:

    a.    The Individual Payments will be mailed to the address shown on the completed Response Form submitted by each Class Member. If the Class Member did not return a Response Form, the Individual

Payments will be mailed to the most recent address included in the file maintained by Worth County School District and/or Worth County High School.  If, prior to the date on which the Individual Payments are mailed, a Class Member has communicated to the attorneys representing the Class that the Class Member has a new address, the Individual Payment will be sent to the new address.

b.    If the Individual Payment that is originally mailed is returned to attorneys for the Class with a forwarding address, attorneys for the Class will mail that same Individual Payment to the forwarding address.

13.    *Cy Pres* **Fund.**  ACCG-IRMA will establish a *cy pres* fund in a bank acceptable to attorneys for the Class (the "*Cy Pres* Fund").  The *Cy Pres* Fund will be established for the benefit of the Worth County High School students, and will be interest-bearing.  The *Cy Pres* Fund will be capitalized as follows:

a.    **Uncashed Checks**.  Once the checks delivered to the Class members pursuant to paragraph 12 above have been either redeemed or forfeited

13

(i.e., 365 days after initial mailing), any amounts remaining in the escrow account for attorneys for the Class which were attributed to the Class members (i.e., the amount representing unredeemed checks to Class members) will be deposited into the *Cy Pres* Fund.

b.  **Remaining Funds**.   The Coverage Agreement has a limit of $3 million.    The distributions discussed above – the Total Class Distribution and the Attorneys' Fee – will not exhaust this $3 million limit.  The difference between the $3 million coverage limit and these two payments (i.e. $3 million minus the Total Class Distribution and minus the Attorneys' Fee) is hereinafter referred to as the "Remaining Funds."

(1)  **Use of Remaining Funds**.  It is anticipated that there will be individuals who opt out of the class, and ACCG-IRMA may use the Remaining Funds to resolve the claims of individuals who opt out of the Class.  The Remaining Funds may not be used to pay attorneys' fees or costs of litigation.

(2)    **Payment of Remaining Funds.**  Once all the claims of the individuals who opt out of the class have been resolved, by settlement, the running of the statute of limitations, or the execution of a release of claims, or once seven years have elapsed from the date of the search (April 14, 2017), fifty percent (50%) of the Remaining Funds will be paid to the *Cy Pres* Fund.  The other fifty percent (50%) of the Remaining Funds will be retained by ACCG-IRMA.

(3)    **Increase in Amount of Funds Paid to *Cy Pres* Fund.** Prior to the payment of the Remaining Funds to the *Cy Pres* Fund, the Remaining Funds will be held by ACCG-IRMA. If the Remaining Funds are not paid to the *Cy Pres* Fund on or before December 31, 2018, the amount of the Remaining Funds that ACCG-IRMA will retain will be decreased by half of one percent (.5%), and the amount of the Remaining Funds that ACCG-IRMA will retain will continue to decrease by half of one percent (.5%) for each

15

year that ACCG-IRMA does not pay the Remaining Funds

to the *Cy Pres* Fund, as measured by the date of December

31, as follows:

| Date of Payment to *Cy Pres* Fund | Percentage of Remaining Funds Retained by Defendants' Insurer |
|---|---|
| On or before 12/31/18 | 50% |
| Between 1/1/19 and 12/31/19 | 49.5% |
| Between 1/1/20 and 12/31/20 | 49% |
| Between 1/1/21 and 12/31/21 | 48.5% |
| Between 1/1/22 and 12/31/22 | 48% |
| Between 1/1/23 and 12/31/23 | 47.5% |
| Between 1/1/24 and 12/31/24 | 47% |

14.    **Binding Effect.** If the Court enters an order giving its final approval to the

Agreement, any Class member who has not requested to be excluded from

the Class will be bound by all subsequent proceedings, orders and judgments

of the Court and will be precluded from asserting any further claim or lawsuit

16

against Defendants and their respective agents, officers, deputies, employees, officials, personal representatives and successors as a result of the searches that were conducted at the Worth County High School on April 14, 2017.

15. **Non-Approval.** If the Agreement is not approved by the Court, the Agreement shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately prior to the entry of the Order Granting Joint Motion to Stay All Proceedings, entered November 21, 2017 (Doc. 38). Further, if the Agreement is not approved by the Court, or if the Agreement is not otherwise consummated, for whatever reason, Plaintiffs shall have 14 days to file a response to Defendants' Motion to Dismiss (Doc. 31) and, if a response to Defendants' Motion to Dismiss is filed within that 14-day period, it shall be deemed to have been filed in a timely manner. In addition, the Parties agree that Defendants will not argue to the Court, prior to the expiration of that 14-day period, that Plaintiffs' lack of response to the Motion to Dismiss amounts to abandonment, concession, estoppel, or any similar concept whereby Plaintiffs would be precluded from responding to the motion.

16.  **Compensatory Nature of Payments.** The settlement payments contemplated in paragraph 8 above are to be considered entirely compensatory in nature.

Respectfully submitted this 4th day of December, 2017.

/s/ Crystal Redd
Sarah Geraghty
Ga. Bar No. 291393
Gerald Weber
Ga. Bar No. 744878
Crystal Redd
Ga. Bar No. 969002
Aaron Littman
Ga. Bar No. 843053
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, NW
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
credd@schr.org

/s/ Mark Begnaud
Mark Begnaud
Ga. Bar No. 217641
Nathanael Horsley
Ga. Bar No. 367832
HORSLEY BEGNAUD LLC
750 Hammond Drive
Building 12, Suite 300
Atlanta, Georgia 30328
(770) 765-5559

18

(404) 602-0018 (fax)
mbegnaud@gacivilrights.com

*Counsel for Plaintiffs*

/s/ Raleigh W. Rollins
Raleigh W. Rollins
Ga. Bar No. 613860
ALEXANDER & VANN, LLP
411 Gordon Avenue
Thomasville, GA 31792
(229) 226-2565
(229) 228-0444 (fax)
rrollins@alexandervann.com

/s/ Richard K. Strickland
Richard K. Strickland
Ga. Bar No. 687830
BROWN, READDICK,
BUMGARTNER, CARTER,
STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 (fax)
rstrickland@brbcsw.com

*Counsel for Defendants*